QUARLES & BRADY LLP
Firm State Bar No. 00443101
One South Church Avenue, Suite 1700
Tucson, Arizona 85701-1621
Telephone: (520) 770-8700

Kasey C. Nye, Esq. (AZ#020610)
E-mail: kasey.nye@quarles.com
Susan G. Boswell, Esq. (AZ#004791)
E-mail: susan.boswell@quarles.com

*Counsel to Appellees Reorganized Debtors*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>TRANSWEST RESORT PROPERTIES, INC.,<br><br>Debtor.<br><br>Jointly Administered with:<br>TRANSWEST TUCSON PROPERTY, L.L.C., TRANSWEST HILTON HEAD PROPERTY, LLC, TRANSWEST TUCSON II, LLC, TRANSWEST HILTON HEAD II, LLC | Case No. 4:12-cv-00024-RCC<br><br>BK No. 4:10-bk-37134-EWH<br>Jointly Administered with Case Nos.:<br>4:10-bk-37160-EWH<br>4:10-bk-37170-EWH<br>4:10-bk-37151-EWH<br>4:10-bk-37145-EWH |
| JPMCC 2007-C1 GRASSLAWN LODGING LLC,<br><br>Appellant,<br><br>v.<br><br>TRANSWEST RESORT PROPERTIES, INC., TRANSWEST TUCSON PROPERTY, L.L.C., TRANSWEST HILTON HEAD PROPERTY, LLC, TRANSWEST TUCSON II, LLC, TRANSWEST HILTON HEAD II, LLC<br><br>Appellees. | **MOTION OF REORGANIZED DEBTORS TO DISMISS APPEAL AS EQUITABLY MOOT**<br><br>**[ORAL ARGUMENT REQUESTED]**<br><br>**Hearing Date:**<br>**Time:**<br>**Location:** |

QB\15771523.11

Appellee debtors Transwest Resort Properties, Inc., Transwest Tucson II, LLC, and Transwest Hilton Head II, LLC, (collectively "**Debtors**") along with appellee reorganized debtors SWVP La Paloma, LLC, formerly known as Transwest Tucson Property, L.L.C., and SWVP Hilton Head, LLC, formerly known as Transwest Hilton Head Property, L.L.C. (collectively, the "**Reorganized Debtors**" and referred to together with the Debtors as "**Appellees**"), hereby move to dismiss as moot the instant appeal (the "**Appeal**") by appellant JPMCC 2007-C1 Grasslawn Lodging, L.L.C. ("**Appellant**") of the order confirming (the "**Confirmation Order**") the Third Amended and Restated Joint Chapter 11 Plan of Reorganization Dated November 17, 2011 (the "**Plan**") proposed by the Reorganized Debtors in their reorganization cases under Chapter 11 of the Bankruptcy Code (the "**Reorganization Cases**").

## I.     INTRODUCTION.

The Reorganized Debtors own the Westin La Paloma Resort and Country Club in Tucson, Arizona and the Westin Hilton Head Island Resort and Spa on Hilton Head Island in South Carolina (collectively, the "**Resorts**"). On December 30, 2011, slightly more than one year after the Reorganization Cases were commenced, the Bankruptcy Court entered the Confirmation Order approving the Plan. On January 18, 2012, (the "**Effective Date**") following this Court's denial of Appellant's request to stay the Confirmation Order, the Plan became effective and the Reorganized Debtors, a new third party investor, who is the new member in the Reorganized Debtors and other parties substantially consummated the Plan by engaging in a series of transactions that have irrevocably altered the capital, corporate and ownership structures of the Reorganized Debtors.

As described in the Declaration of Mark Schlossberg, SWVP LP-HH, LLC, a Delaware limited liability company ("**SWVP LP-HH**"), immediately upon occurrence of the Effected Date and in reliance on the Confirmation Order, invested approximately $13 million in new capital in the Reorganized Debtors — the first step in what will be a $60 million investment when creditor payments and the Property Improvement Plans are completed — to fund the payments to be made under the Plan, certain reserves required

by the Plan and other items to move the reorganization forward. Since the Effective Date SWVP LP-HH has invested millions of additional dollars to implement critical improvements and renovations to the Resorts and satisfy other obligations. The existing equity interests in the Reorganized Debtors were cancelled and extinguished, and new equity interests were issued to SWVP LP-HH, LLC on account of its capital contribution, which became the new equity holder in the Reorganized Debtors. Thereafter, the Reorganized Debtors registered name changes for the Reorganized Debtor with the Delaware Department of State: Division of Corporations. The existing equity interests in Transwest Tucson II, L.L.C. and Transwest Hilton Head II, L.L.C. - two of the Debtors who were the parent holding entities and prior equity holders in the Reorganized Debtors (the "**Level II Debtors**") - were also cancelled and extinguished.

The Resorts and other property revested in the Reorganized Debtors pursuant to the Plan and applicable Bankruptcy Code provisions, and consistent with the substantial modifications to their corporate and ownership structures, SWVP LP-HH assumed management responsibility for the Reorganized Debtors. The Reorganized Debtors also executed a comprehensive amendment to the management agreements (the "**Amended Management Agreements**") with a wholly owned affiliate of Starwood Hotels & Resorts Worldwide, Inc. ("**Starwood**") which continued to manage and operate the Resorts, as provided for under the Plan and the Confirmation Order. As describe in the Declarations of William Webster and Mark Schlossberg, Starwood agreed to accept lower management fees under the Amended Management Agreements than it was receiving under the original management agreements. Significantly, the Amended Management Agreements incorporated property improvement plans (the "**Property Improvement Plans**") which committed the Reorganized Debtors to complete the largest renovations in the history of the two Resorts. The Property Improvement Plans commit SWVP Hilton Head LLC to complete an estimated $20+ million scope of work within 24 months and SWVP La Paloma to complete an estimated $25+ million scope of work within 36 months. As described in the Declaration of Mark Robinson, in the six weeks since the Effective Date,

and with respect to the renovation costs alone, the Reorganized Debtors have devoted hundreds of hours furthering the renovation plan, and, as of today's date, have entered into contracts and purchased capital items at a cost of over $2.5 million dollars with over $700,000 already disbursed. Every day additional efforts are made, additional contracts executed, and more money disbursed as progress is made furthering the renovation commitment.  Finally, the Reorganized Debtors have begun to make distributions as required under the Plan, including to holders of administrative claims, secured claims and unsecured claims.

By its appeal, Appellant seeks to vacate the Confirmation Order to pursue a foreclosure sale of the Resorts, thereby asking this Court to disregard the complicated transactions that have occurred in connection with substantial consummation of the Plan and destroying the reorganization of the Reorganized Debtors.  However, these transactions cannot be unwound at this juncture, and, it is impossible to restore the parties to their respective positions as they existed prior to the effective date of the Plan.

Furthermore, to vacate the Confirmation Order would jeopardize a highly successful reorganization and inflict significant harm to third parties that are not involved in this Appeal.  Indeed, the transactions described above directly affect not only the rights and liabilities of the Reorganized Debtors and their prospects for a successful reorganization, but also the rights of third parties that are not before the Court, some of whom were not before the Bankruptcy Court, and all of whom are not directly involved in this Appeal.  The reliance of these third parties and the Reorganized Debtors on the Confirmation Order make it impractical and inequitable to grant the relief sought by Appellant.

There is a strong presumption against disturbing a substantially consummated Chapter 11 plan of reorganization on appeal, in particular where it serves as the foundation for the reorganization of an operating business and its successful emergence from Chapter 11; and where the interests of third parties that have relied on the Confirmation Order would be substantially harmed.  Given that the Plan has been

substantially consummated, third parties have extensively relied on the Confirmation Order, commitments are being made to implement extensive improvements to the properties, and it is impossible to grant the relief sought by Appellant without vacating the Confirmation Order, the Reorganized Debtors respectfully request that the Court enter an order dismissing the Appeal under the doctrine of equitable mootness.

**II.     BACKGROUND.**

1. On November 17, 2010, the Reorganized Debtors, Transwest Tucson II, L.L.C., Transwest Hilton Head II, L.L.C. and Transwest Resort Properties, Inc. (collectively, the "**Debtors**") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), and on November 17, 2011, the Debtors filed the Plan, which represented the culmination of their efforts to successfully reorganize and emerge from Chapter 11.

2. The Plan proposed a comprehensive restructuring of the corporate, ownership and capital structures of the Reorganized Debtors, the funding and implementation of ambitious Property Improvement Plans to renovate and improve the Resorts, the assumption of amended management agreements with a Starwood affiliate related to the management and operation of the Resorts, and a series of related transactions.

3. Southwest Value Partners Fund XV, LP, a Delaware limited partnership ("**SWVP Fund**"), provided a commitment to fund the Plan and acquire the new membership interests in the Reorganized Debtors. SWVP Fund is an investment fund that typically makes its investments through special purpose entities that are created for specific transactions. SWVP Fund is managed by Southwest Value Partners Enterprise LLC ("**SWVP**"). Neither SWVP Fund nor SWVP had any prior or relationship to any of the Debtors, or any of their related or affiliated entities or principals.

4. On December 15, 2011, SWVP Fund established SWVP LP-HH for the specific purpose of providing the investment in the Reorganized Debtors under the Plan, and infused SWVP LP-HH LLC with approximately $30.0 million in capital.

5. On December 30, 2011, the United States Bankruptcy Court for the District of Arizona (the "**Bankruptcy Court**") entered the Confirmation Order.

6. On January 3, 2012, Appellant filed a motion in the Bankruptcy Court to stay the Confirmation Order pending appeal (the "**Initial Motion for Stay**"). After conducting a hearing on the Initial Motion for Stay, the Bankruptcy Court denied the Initial Motion for Stay pursuant to order entered on January 10, 2012.

7. On January 11, 2012, Appellant filed a motion with this Court to stay the Confirmation Order pending appeal (the "**Second Motion for Stay**"). After conducting a hearing on the Second Motion for Stay, this Court entered an order denying the Second Motion for Stay on January 18, 2012, finding, among other things, that Appellant did not demonstrate a substantial likelihood of success on the merits, and that the balance of hardships favored implementation of the Plan.[1]

8. As stated in the Introduction, on and after the Effective Date, the Reorganized Debtors have taken various steps to implement the Plan which included a series of complex transactions such as:

- SWVP's management team assumed control over and responsibility for management of the Reorganized Debtors.

- SWVP LP-HH and the Reorganized Debtors opened new bank accounts at Bank of America, Western Alliance Bank and Torrey Pines Bank for operating accounts, fixture, furniture, and equipment reserves, debt service reserves and other reserves, and the respective debtor-in-possession accounts (including operating and various reserve accounts) were transferred to the appropriate new accounts.

- SWVP LP-HH funded $5.0 million in working capital for the Reorganized Debtors (consisting of $2.5 million for each of the Reorganized Debtors), which was deposited in their respective operating accounts and has been used to fund operations since the Effective Date.

---

[1] *See* District Court Docket No. 35.

- SWVP LP-HH funded $7.0 million in debt service reserve accounts for the Reorganized Debtors.[2]

- SWVP LP-HH provided funding to each of the Reorganized Debtors for purposes of making disbursements under the Plan and the Reorganized Debtors distributed $1,255,212.87 to approximately 443 creditors.

- The Reorganized Debtors closed their then existing books and created new general ledgers, cash disbursement schedules, operating performance reports, and financial statements.

- The prior equity interests of the Level II Debtors in the Reorganized Debtors were cancelled and extinguished, and as provided in the Plan, in exchange for its capital investment, SWVP LP-HH received 100% of newly issued equity interests in the Reorganized Debtors. The names of the Reorganized Debtors were changed from Transwest Tucson Property, L.L.C. and Transwest Hilton Head Property, L.L.C. to SWVP La Paloma, LLC and SWVP Hilton Head, LLC, respectively, in registered filings with the Delaware Department of State: Division of Corporations.

- SWVP LP-HH and the Reorganized Debtors entered into new limited liability company agreements governing the rights and obligations of SWVP LP-HH as the sole member and initial manager of the Reorganized Debtors, which replaced the prior limited liability company agreements for the Reorganized Debtors.

- The Reorganized Debtors executed and delivered entered into an Amended and Restated Loan Agreement, a Memorandum of Loan Modification Documents (the "**Memorandum**") and Amended and Restated Promissory Notes (collectively, the "**Loan Documents**") to the Appellant by which the

---

[2] Following the Effective Date, the Reorganized Debtors, Starwood and the respective financial institutions also negotiated and executed account control agreements for the debt service reserve accounts in favor of Appellant, which have been forwarded to Appellant for its signature as required by the Confirmation Order.

secured debt owed to Appellant was comprehensively restructured as provided for in the Plan and the Confirmation Order.

- The Reorganized Debtors recorded the Memorandum in the real property records for the jurisdictions in which the Resorts are located.

- Pursuant to the Plan and Confirmation Order, the Amended Management Agreements were assumed and the payment required to be made to Starwood of approximately $161,879 to cure existing defaults thereunder was paid.

- Pursuant to the Plan and Confirmation Order, each of the Reorganized Debtors entered into Amended and Restated Agreement and Consent, Subordination, Non-disturbance and Attornment Agreements with Starwood related to each of the Resorts, which have been forwarded to Appellant for its signature.

- Pursuant to the Plan and Confirmation Order, the Reorganized Debtors assumed multiple executory contracts and leases (collectively, the "**Assumed Contracts**").

9. Since the Effective Date, SWVP, SWVP LP-HH, Starwood and the Reorganized Debtors have taken a number of additional important steps in reliance on the Plan and the Confirmation Order that can be broadly categorized as relating to (a) management and marketing of the Resorts; (b) implementing distributions to creditors under the Plan to be made after the Effective Date; and (c) agreeing to and implementing the Property Improvement Plans for each of the Resorts.

10. With respect to management and marketing of the Resorts, Starwood has continued to operate and manage the Resorts in compliance with the terms of the Amended Management Agreements and, among other things, representatives of SWVP have personally traveled to and met in person with senior management teams at each of the Resorts. During these meetings, SWVP has made commitments regarding its personal involvement in managing, improving and maintaining the Resorts, which are essential to

attracting and retaining quality management personnel for the Resorts—problems that the Debtors were experiencing prior to confirmation of the Plan as a result of the uncertainty of the outcome of the bankruptcy.

11. The general managers of the Resorts have also sent letters to important group business customers and prospects signed by senior executives at SWVP that explains the change in ownership and SWVP's commitment to completing the Property Improvement Plans and renovating the Resorts to encourage customers to book meetings at the Resorts.

12. The Reorganized Debtors, utilizing funds from the new equity investment of SWVP LP-HH made the first installment payments (which were due on March 1st) to EZ Trading, GE Capital, and LNR under the Plan. In addition SWVP LP-HH has funded and the Reorganized Debtors have paid distributions to other creditors (excluding approved professional fees) totaling $1,255,212.87 as follows:

| Class | Description | Claimants Paid | Amount Paid |
| --- | --- | --- | --- |
| Unclassified | Administrative | 2 | $ 279,319.35 |
| Unclassified | Priority Tax | 2 | $ 184,521.79 |
| Class 4 | Convenience Unsecured Claims | 402 | $ 707,141.87 |
| Class 5 | Unsecured Trade | 37 | $ 84,229.86 |
| | Total | 443 | $1,255,212.87 |

13. On January __, 2012, each of the Reorganized Debtors and Starwood executed the Property Improvement Plans whereby the Reorganized Debtors became contractually obligated to complete the largest improvements and renovations in the histories of the Resorts within a twenty-four month period as to the Westin Hilton Head resort and thirty-six month period as to the Westin La Paloma resort. In addition SWVP LP-HH provided its commitment to fully fund all of the improvements and renovations required under the Property Improvement Plans.

14. The Reorganized Debtors have already committed substantial funds to implementing the Property Improvement Plans and have made meaningful progress in commencing the contemplated improvements and renovations to the Resorts. To date, the

Reorganized Debtors have approved proposals and executed agreements costing approximately $2.5 million for repairs, renovations and improvements to the Resorts. Among others the Reorganized Debtors have engaged Design & Development Consulting, to oversee all renovations and improvements at the Resorts for a base fee of $420,000, engaged the design firm of Cole Martinez Curtis and Associates to oversee all design elements at the Resorts for a base fee of $475,000. The Reorganized Debtors have also have also contracted with roofing, paving, and pool repair contractors, among others. Every day additional efforts are made, additional contracts executed, and more moneys disbursed in furthering the renovation.

15.   In the aggregate, substantially all of the transactions to be implemented under the Plan have been consummated, the property dealt with under the Plan has been transferred (including the Resorts, which have revested in the Reorganized Debtors), the Reorganized Debtors are operating under new management and ownership, Starwood is operating and managing the Resorts under the Amended Management Agreements, the Property Improvement Plans are being implemented, the Reorganized Debtors have entered into contractual and commercial relationships with vendors, suppliers and patrons and have assumed the Assumed Contracts, and distributions to creditors have commenced. These transactions have directly affected not only the rights and liabilities of the Reorganized Debtors and their prospects for a successful reorganization, but also the rights of third parties that are not involved in the appeal commenced by Appellant nor are they before this Court in any capacity.[3]

**III.   ARGUMENT.**

**A.   The Appeal Should be Dismissed Under the Equitable Mootness Doctrine.**

The failure of Appellant to obtain a stay of the Confirmation Order, followed by the substantial consummation of the Plan and the occurrence of various complex related

---

[3] A number of the new vendors who are providing goods and services to the Reorganized Debtors in reliance on their emergence from Chapter 11who would be adversely affected by a reversal of the Confirmation Order were not before the Bankruptcy Court either.

transactions involving third parties that have relied on the Confirmation Order, has rendered the Appeal moot under equitable principles.

The doctrine of equitable mootness reflects "public policy values [regarding] the finality of bankruptcy judgments because debtors, creditors, and third parties are entitled to rely on a final bankruptcy court order." *In re Thorpe Insulation Co.*, No. 10-56543, 2012 U.S. App. LEXIS 1272, at *15 (9th Cir. Jan. 24, 2012); *see also In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1172 (9th Cir. 1988).

An appeal may become equitably moot when a "'comprehensive change of circumstances' has occurred so 'as to render it inequitable for this court to consider the merits of the appeal.'" *Id.* (quoting *In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir. 1981)). "Ultimately, the decision whether to unscramble the eggs turns on what is practical and equitable." *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1351-52 (9th Cir. 1994)). Thus, "[t]he question is whether the case 'present[s] transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply.'" *Thorpe Insulation*, 2012 U.S. App. LEXIS 1272, at *15 (quoting *Lowenschuss v. Selnick (In re Lowenschuss)*, 179 F.3d 923, 933 (9th Cir. 1999).

In order to determine whether an appeal of an order confirming a Chapter 11 plan of reorganization is equitably moot, a court must first assess "whether a stay was sought, for absent that a party has not fully pursued its rights." *Thorpe Insulation*, 2012 U.S. App. LEXIS 1272, at *18; *see also In re Arnold & Baker Farms*, 85 F.3d 1415, 1419 (9th Cir. 1996). "If a stay was sought and not gained, [a court must then] look to whether substantial confirmation of the plan has occurred." *Id.* Following this evaluation, a court must "look to the effect a remedy may have on third parties not before the court." *Id.*; *see also In re Spirtos*, 992 F.2d 1004, 1006 (9th Cir. 1993) (noting that an appeal may be dismissed as equitably moot if the appellant failed "to obtain a stay pending appeal and the rights of third parties have intervened"); *Roberts Farms*, 652 F.2d at 798. "Finally, [a court must] look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an

uncontrollable situation for the bankruptcy court." *Id.*; *see also Roberts Farms*, 652 F.2d at 797.

Consequently, where a plan has "been so far implemented that it is impossible to fashion effective relief for all concerned," and where disapproval of the plan on appeal "would do nothing other than create an unmanageable, uncontrollable situation for the Bankruptcy Court," the appeal may be dismissed as equitably moot. *Roberts Farms*, 652 F.2d at 797; *see also Thorpe Insulation*, 2012 U.S. App. LEXIS 1272, at *18.

Here, these considerations dictate that the Appeal be dismissed as equitably moot. First, although Appellant sought a stay of the Confirmation Order, it was denied by the Bankruptcy Court and this Court because, among other things, Appellant failed to show a likelihood of success on the merits for any issues raised in the Appeal that "were not already waived by stipulation." *See* Order [Docket No. 35] at 1.  Second, after Appellant failed to obtain a stay of the Confirmation Order, the Plan was substantially consummated, and various complex transactions approved by the Confirmation Order and Plan occurred.  Third, the interests of third parties that have relied on the Confirmation Order and not involved in the Appeal will be substantially harmed if the Confirmation Order is modified or revoked. Fourth, the Resorts are ongoing and operating businesses and numerous third parties, including entities and individuals who are booking rooms and events at the Resorts, are acting in reliance on the stability of the businesses, completion of the property improvement plans and certainty rather than uncertainty.  Finally, given that Appellant seeks to vacate the Confirmation Order and pursue a foreclosure action, it is impossible for this Court to provide an effective and equitable remedy without completely undermining and jeopardizing the Plan, if not eliminating altogether, the ability of the Reorganized Debtors to successfully reorganize, which will create a situation of uncontrollable chaos for the Bankruptcy Court and parties in interest.  The inability to equitably fashion any of the relief sought by Appellant makes dismissal of the Appeal the only proper course.

## B. The Plan Has Been Substantially Consummated.

It is well established that an order confirming a Chapter 11 plan of reorganization may be dismissed under the doctrine of equitable mootness if the appellant "'has failed to obtain a stay pending appeal, and the plan has been carried out'" to substantial consummation. *Arnold & Baker Farms*, 85 F.3d 1415, 1419 (9th Cir. 1996) (quoting *Baker & Drake*, 35 F.3d at 1351); *see also In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) (noting that "a plan of reorganization, once implemented, should be disturbed only for compelling reasons"); *Roberts Farms*, 652 F.2d 793.

In fact, it is often presumed that an appeal of an order confirming a Chapter 11 plan of reorganization is rendered equitably moot after substantial consummation of the plan. *See, e.g., Aetna Cas. & Sur. Co. v. LTV Steel Co. (In re Chateaugay Corp.)*, 94 F.3d 772, 776 (2d Cir. 1996) ("Reviewing courts presume that it will be inequitable or impractical to grant relief after substantial consummation of a plan of reorganization."); *In re Pub. Serv. Co.*, 963 F.2d 469, 473 n.13 (1st Cir. 1992) (substantial consummation of Chapter 11 plan of reorganization "raises a 'strong presumption' that an appellate court will not be able to fashion an equitable and effective remedy") (quoting *In re AOV Indus., Inc.,* 792 F.2d 1140, 1149 (D.C. Cir. 1986)); *In re Adelphia Commc'ns Corp.*, 367 B.R. 84, 91 (S.D.N.Y. 2007) ("Equitable mootness of an appeal of a bankruptcy court order confirming a plan of reorganization under chapter 11 is presumed when the reorganization plan has been substantially consummated . . . ."); *Lenders Prot. Group v. USA Commercial Mortgage Co. (In re USA Commercial Mortgage Co.)*, Case No. 2:07-CV-00072-RCJ-GWF, 2007 U.S. Dist. LEXIS 65264, at *30 (D. Nev. Aug. 29, 2007) (citing *Adelphia*).

Substantial consummation of a chapter 11 plan of reorganization occurs, within the meaning of Bankruptcy Code section 1101(2), when "all or substantially all of the property proposed by the plan to be transferred" has been transferred, the debtor or its successor has assumed the business or management "of all or substantially all of the property dealt with by the plan" and "distribution under the plan" has commenced. 11 U.S.C. § 1101(2); *see also Thorpe Insulation*, 2012 U.S. App. LEXIS 1272, at *20-21.

In this case, the Plan has been substantially consummated, and the capital, corporate and ownership structures of the Reorganized Debtors have all been irrevocably altered, including through the cancellation of old equity interests and the issuance of new equity interests in the Reorganized Debtors to SWVP LP-HH. As detailed above, SWVP LP-HH has invested tens of millions of dollars in the Reorganized Debtors, the Resorts and other property have revested in the Reorganized Debtors, and the Reorganized Debtors have assumed the Assumed Contracts. SWVP LP-HH is the new owner and manager of the Reorganized Debtors, and the Resorts are now being managed and operated by Starwood under the Amended Management Agreements. The Reorganized Debtors have also proceeded to implement the Property Improvement Plans for the Resorts which are critical to their success, and approximately $2.5 million has already been contributed as working capital for each of the Resorts. In addition, distributions to creditors under the Plan have commenced, and all administrative and convenience claims have been paid in full.

It is impractical, if not impossible, to unwind these complicated transactions that have resulted in the comprehensive change of circumstances described above such as: (i) the cancellation and extinguishment of equity interests in various of the Debtors; (ii) the issuance of new equity interests to SWVP LP-HH; (iii) the revesting of the property in the Reorganized Debtors; (iv) the operation of the Resorts pursuant to the Amended Management Agreements; (v) the restructure of the secured indebtedness under the Plan is governed and implementation of the new loan documents that replaced prior instruments that have since been terminated. In addition, the distributions that have been made to creditors cannot feasibly be recovered.

Furthermore, unwinding the transactions that have occurred will only result in "an unmanageable, uncontrollable situation for the Bankruptcy Court" supporting the dismissal of the Appeal for equitable mootness. *Roberts Farms, Inc.*, 652 F.2d at 797. Indeed, any reversal or modification of the Confirmation Order would undoubtedly "knock the props out from under the authorization for every transaction that has taken

place," *Roberts Farms*, 652 F.2d at 797, and inequitably undermine the stability of an otherwise successful reorganization. The ability of the Reorganized Debtors to attract capital investment was dependent on the restructuring of their obligations and implementation of the transactions approved by the Confirmation Order. In the event that the Confirmation Order is vacated and these transactions are nullified, it will lead to enormous instability and jeopardize the ability of the Reorganized Debtors to reorganize in the first instance and its continued operations.

Finally, after twice failing to obtain a stay of the Confirmation Order, Appellant should not now be permitted to jeopardize the successful reorganization of the Reorganized Debtors through its meritless Appeal. *See, e.g., Roberts Farms,* 652 F.2d at 796 ("[I]n the field of the administration of estates under the bankruptcy laws, the policy of the law strongly supports a requirement that a stay be obtained if review on appeal is not to be foreclosed because of mootness."); *In re Berryman Prods.*, 159 F.3d 941, 946 (5th Cir. 1998) (rejecting appeal of plan confirmation order as equitably moot where relief requested "would frustrate creditor relations" and disrupt a successful reorganization); *UNR Indus.*, 20 F.3d at 769-70 ("The significance of an application for a stay lies in the opportunity it affords to hold things in stasis, to prevent reliance on the plan of reorganization while the appeal proceeds. A stay not sought, and a stay sought and denied, lead equally to the implementation of the plan of reorganization. And it is the reliance interests engendered by the plan, coupled with the difficulty of reversing the critical transactions, that counsels against attempts to unwind things on appeal.").

**C.   Third Parties Not Involved in This Appeal Have Relied on the Confirmation Order.**

The Appeal should also be dismissed as equitably moot because "the rights of third parties have intervened" and would be significantly harmed if the Confirmation Order were modified or vacated. *Spirtos*, 992 F.2d at 1006; *see also Thorpe Insulation*, 2012 U.S. App. LEXIS 1272, at *18; *Roberts Farms*, 652 F.2d at 798. Because a court must determine that it can "fashion effective relief *for all concerned*," *Roberts Farms*, 652 F.2d

at 797 (emphasis added), it is particularly appropriate to dismiss the appeal of an order confirming a Chapter 11 plan of reorganization where, as here, consummation of the plan has resulted in numerous transactions that, if undone in full or part, would inequitably prejudice the interests of third parties and jeopardize the reorganization. *See, e.g., In re Clarke*, 98 B.R. 979, 980 (B.A.P. 9th Cir. 1989) (dismissing appeal of plan confirmation order as equitably moot and stating that "piecemeal reversal of [a] confirmed plan would be improper under circumstances wherein 'implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available.'") (citing *Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.*, 841 F.2d 92, 96 (4th Cir. 1988)); *UNR Indus.*, 20 F.3d at 769; *Pub. Serv. Co.*, 963 F.2d at 473 & nn.11 & 12 (1st Cir. 1992) (collecting authorities).

In fact, where developments following entry of an unstayed bankruptcy court order have affected the rights of third parties, dismissal of an appeal on grounds of equitable mootness is generally warranted. *See Clarke*, 98 B.R. at 980 (dismissing appeal of plan confirmation order as equitably moot where "the resulting effect of a piecemeal plan modification on third-parties is unclear"); *accord, e.g., Arnold & Baker Farms*, 85 F.3d at 1419-20; *In re Envirodyne Indus.*, 29 F.3d 301, 304 (7th Cir. 1994) (noting that the equitable mootness "doctrine is perhaps best described as merely an application of the age-old principle that in formulating equitable relief a court must consider the effects of the relief on innocent third parties. . . . [I]f modification of a plan of reorganization would upset legitimate expectations, it may be refused."); *In re Blumer*, 66 B.R. 109, 113 (B.A.P. 9th Cir. 1986) ("Effective relief is impossible if funds have been disbursed to persons who are not parties to the appeal . . . .").

As explained above and in the Declarations of William Webster, Mark Robinson, and Mark Schlossberg, the transactions that have occurred involve material reliance on the Confirmation Order by numerous third parties, including Starwood, creditors, suppliers, vendors and parties to the Assumed Contracts and other agreements that have been

executed in connection with implementation of the Property Improvement Plans. These parties have entered into contractual and commercial relationships with the Reorganized Debtors in reliance on the Confirmation Order and under the presumption that the Reorganized Debtors have successfully emerged from Chapter 11 with the financial support of SWVP LP-HH and its investment of approximately tens of millions of dollars in new capital. Critically, none of these third parties are before this Court, even though any modification or reversal of the Confirmation Order will substantially and adversely harm their interests by upsetting their transactions with the Reorganized Debtors and creating significant new liabilities for the Reorganized Debtors.[4]

## IV. CONCLUSION.

For these the foregoing reasons, this Court should dismiss the Appeal as equitably moot.

RESPECTFULLY SUBMITTED this 5th day of March, 2012.

QUARLES & BRADY LLP
One South Church Avenue
Suite 1700
Tucson, Arizona 85701-1621

By  /s/ *Kasey C. Nye*
    Kasey C. Nye
    Susan G. Boswell

Counsel to Reorganized Debtors

---

[4] It is also worth noting that the harm to Appellant is nonexistent. It will receive the full amount it is owed through payments under the Plan on terms that Appellant proposed (the payment rate) and agreed to (the term and other provisions).

# CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

- susan.boswell@quarles.com
- foutzj@ballardspahr.com
- harnischa@ballardspahr.com
- minkine@ballardspahr.com
- kasey.nye@quarles.com
- sorensenp@gtlaw.com
- clearyd@gtlaw.com
- waldtd@ballardspahr.com
- pearsonj@ballardspahr.com
- eobrien@swlaw.com
- dgaffney@swlaw.com

I hereby certify that on March 5, 2012, I served the attached document by First Class U.S. Mail on the following, who are not registered participants of the CM/ECF System:

The Hon. Eileen W. Hollowell
United States Bankruptcy Court
District of Arizona
James A. Walsh Courthouse
38 South Scott Avenue, Room 100
Tucson, Arizona 85701-1704


/s/  Sattie Sumeer