**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br>TRANSWEST RESORT PROPERTIES, INC.,<br>                   Debtor.<br>Joint Administration with:<br>TRANSWEST TUCSON PROPERTY, L.L.C., TRANSWEST HILTON HEAD PROPERTY, L.L.C., TRANSWEST TUCSON II, L.L.C. and TRANSWEST HILTON HEAD II, L.L.C.<br>─────────────────────────<br>JPMCC 2007-C1 GRASSLAWN LODGING, LLC,<br>                   Appellant,<br>v.<br>TRANSWEST RESORT PROPERTIES, INC., TRANSWEST TUCSON PROPERTY, L.L.C., TRANSWEST HILTON HEAD PROPERTY, L.L.C., TRANSWEST TUCSON II, L.L.C., TRANSWEST HILTON HEAD II, L.L.C.,<br>                   Appellees. | Case No. 4:12-cv-00024-RCC (Lead Case)<br>Consolidated with Appeal Case No. 4:12-cv-00121-RCC<br><br>On appeal from Chapter 11 Case No. 4:10-bk-37134-EWH<br><br>Jointly Administered with Case Nos.:<br>4:10-bk-37160-EWH<br>4:10-bk-37170-EWH<br>4:10-bk-37151-EWH<br>4:10-bk-37145-EWH<br><br>**ORDER** |

     Pending before this Court is Appellant JPMCC 2007-C1 Grasslawn Lodging, LLC's ("Lender") appeal of the Bankruptcy Court for the District of Arizona's holding that 11 U.S.C. § 1111(b) allows a due-on-sale clause to have a ten year exception and that 11 U.S.C. § 1129(a)(10) applies on a "per-plan" basis before confirming the plan. Previously, this Court held that Lender's contentions were equitably moot. The Ninth Circuit held that Lender's contentions were not equitably moot then reversed and

remanded the case for further proceedings. For the foregoing reasons, this Court holds that 11 U.S.C. § 1111(b) does not require a due-on-sale clause and that 11 U.S.C. § 1129(a)(10) applies on a per-plan basis.

## I.

### A. Background

In 2007, five related entities acquired the Westin Hilton Head Resort and Spa and the Westin La Paloma Resort and Country Club. The five entities (collectively "Debtors") were: Transwest Hilton Head Property, LLC, and Transwest Tucson Property, LLC (collectively "Operating Debtors"); Transwest Hilton Head II, LLC, and Transwest Tucson II, LLC (collectively "Mezzanine Debtors"); and Transwest Resort Properties, Inc. ("Holding Company Debtor"). The Holding Company Debtor was the sole owner of the Mezzanine Debtors. The Mezzanine Debtors, in turn, were each the sole owners of the Operating Debtors, which owned and operated the respective resorts.

The hotel acquisitions were financed by a $209 million mortgage loan to the Operating Debtors that was secured by liens on the two hotels and a $21.5 million loan to the Mezzanine Debtors secured by liens on the ownership interests in the Operating Debtors.

In 2010, Debtors filed Chapter 11 petitions and the five cases were jointly administered but not substantively consolidated. Lender, who acquired the mortgage loan before Debtors filed for bankruptcy, filed a proof of claim in the bankruptcy proceeding for $209 million. PIM Ashford Subsidiary I LLC, who acquired the mezzanine loan in 2008, filed two proofs of claim totaling $39 million. Debtors and Lender stipulated that the value of the two resorts was $92 million.

### B. Reorganization Plans

Debtor's joint plan of reorganization proposed to cancel the Mezzanine Debtors' equity interest in the Operating Debtors and to dissolve the Mezzanine Debtors. Southwest Value Partners Fund XV, LP ("SWVP") would then invest no less than $30 million and would

-2-
130389335.1

also become the sole owner of the Operating Debtors.

Pursuant to 11 U.S.C. § 1111(b)(2), Lender elected to have its entire allowed claim, $247 million, treated as a secured claim. Under the proposed plan, Lender's loan would be reinstated but the repayment requirements would be restructured. The repayment schedule would be comprised of monthly interest-only payments and then a balloon payment of the remaining loan amount after 21 years.

The restricted loan would also include a due-on-sale clause. Pursuant to the clause, any sale or refinancing of the resorts would make the entire remainder of the $247 million loan due immediately. However, the clause contained an exception: between years five and fifteen of the loan, the resorts could be sold or refinanced subject to the restricted loan. That is, a new buyer could take on the loan obligation without the full amount of the loan coming due on sale, as long as certain conditions were met.

PIM Ashford's treatment under the plan depended on how it voted for the plan. If it voted against the plan, it would not receive any distributions; if it voted for the plan, the entity would be entitled to a small percentage of surplus cash flow in the future. The plan extinguished the mezzanine loan's collateral, which was the Mezzanine Debtors' equity interest in the Operating Debtors.

The plan had ten classes of claims with the mortgage loan and the mezzanine loan in a class by themselves. After the plan was proposed, Lender acquired the mezzanine loan from PIM Ashford. Lender then voted both its positions, its original claim and the claim it obtained from PIM Ashford, against the plan.

The bankruptcy court confirmed the plan despite Lender's two dissenting classes because the plan satisfied the "cram down" requirements of § 1129(b). Pursuant to the plan, the restructured mortgage loan entitled the Lender to deferred cash payments (1) totaling at least the amount of the allowed claim ($247 million, or the "total loan amount"), and (2) having a net present value equal to the value of the collateral. ($92 million). 11 U.S.C. § 1129(b)(2)(A)(i)(II). Lender also retained a lien on the resorts for the total loan amount. *Id.* § 1129(b)(2)(A)(i)(I).

The Operating Debtors were renamed SWVP La Paloma, LLC and SWVP Hilton Head Property, LLC (collectively "Reorganized Debtors") and continued to be wholly owned by SWVP through an intermediary entity. The Reorganized Debtors became the borrowers under the restructured mortgage loan.

**C. Lender's Objections**

Previously, Lender objected to two aspects of the plan. First, Lender argued that the ten-year exception to the due on sale clause should be removed because it negated Lender's § 1111(b) election. Lender contends that the option to keep the entire loan amount as a secured claim, codified in § 1111(b), was intended by Congress to protect secured creditors against the undervaluation of their collateral. According to Lender, if the collateral for a loan were undervalued, the due-on-sale clause would protect Lender's interest by preventing Debtor from immediately selling the collateral subject to the restructured loan and capturing the true value of the collateral. Lender claimed that the exception to the due-on-sale clause between years five and fifteen would allow Reorganized Debtors to unfairly negate at least part of the benefit of Lenders § 1111(b) election.

Second, Lender argued that the bankruptcy court misapplied one of the plan confirmation requirements. Section 1129(a)(10) states that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan [must have] accepted the plan" for it to be confirmed. Lender noted that in cases involving multiple debtors, courts have spilt on whether § 1129(a)(10)'s requirement applies on a "per-plan" or "per-debtor" basis. *Compare In re Tribune Co.,* 464 B.R. 126, 180–84 (Bankr.D.Del.2011) (per-debtor) *with JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC* (*In re Charter Commc'ns* ), 419 B.R. 221, 264–66 (Bankr.S.D.N.Y.2009) (per-plan). Lender argued for the per-debtor interpretation of § 1129(a)(10). Because Lender is the only impaired class of creditors for the Mezzanine Debtors and Lender did not vote for the plan, Lender argues that the plan violated § 1129(a)(10) under the per-

debtor interpretation.

The bankruptcy court overruled Lender's two objections and confirmed the plan. Lender appealed to this Court. This Court dismissed Lender's appeal, which advanced Lender's two objections to the plan, and held that the appeal was equitably moot. The Ninth Circuit reversed and remanded for further proceedings. Here, Lender again advances the previous two objections.

## II. Standard of Review

The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re Candland*, 90 F.3d 1466, 1469 (9th Cir. 1996)(citation omitted).

## III. Analysis
### A. 11 U.S.C. § 1111(b)(2) Requirements

Section 1111(b)(2) allows an undersecured creditor to elect to have its entire claim treated as a nonrecourse secured claim, thereby foregoing any unsecured deficiency claim. Here, Lender made a § 1111(b) election and the bankruptcy court added a due-on-sale clause to the plan. However, the plan also permits the sale of the resorts subject to Lender's restricted loan in years five through fifteen. That is, Debtors may sell the resorts at any time during the ten year window without accelerating the restricted loan or paying Lender in full, rather, the loan transfers to the new buyer under the same terms set forth in the plan. Additionally, the plan stretches the term of the loan from ten to twenty-one years.

First, it is important to consider the effects of 11 U.S.C. § 506(a) on the claim of a creditor not making the § 1111(b)(2) election. Under § 506(a), the total claim of an undersecured creditor is bifurcated into two claims: (1) a secured claim equal to the value of the collateral and (2) an unsecured claim equal to the remainder of the obligation owning to the creditor as of the petition date. *In re Weinstein*, 227 B.R. 284, 291 (B.A.P.

9th Cir. 1998). Regarding the unsecured portion of the undersecured creditor's claim, the treatment of that claim in bankruptcy depends on whether the creditor did or did not have recourse. A nonrecourse creditor is one who can "look only to its collateral for satisfaction of its debt and does not have any right to seek payment of any deficiency from a debtor's other assets." *Id*. A recourse creditor "has the right to seek payment of a deficiency in the value of its collateral from the debtor's other assets." *Id.* at 292.

Section 1111(b)(2) states: "[i]f such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed." 11 U.S.C. § 1111(b)(2). A § 1111(b)2 election treats the electing creditor's total claim as a secured claim rather than having both a secured and an unsecured deficiency claim for Chapter 11 purposes. This allows a technically undersecured creditor to avail itself of the protections provided for secured claims, including those detailed in § 1129(b)(2)(A).

Here, Lender argues that a § 1111(b)(2) election requires the inclusion of a due-on-sale clause without a ten year exception. Lender contends that the plan currently allows Debtors "to cash out of its investment after the resorts are renovated and at their peak value, while requiring Lender to remain holding the secured debt with a new borrower until the restricted loan matures in 2033." Doc. 110 at 10. However, the plain language of the statute does not indicate that a due-on-sale clause is an absolute right. Section 1129(b)(2)(A) also makes no reference to any such requirement. Further, the authority that Lender has cited does not compel this Court to read such a requirement into the text of the statute. The Court also notes that the confirmed loan provides the Lender with additional protections compared to the original loan. For example, the original loan did not have a due-on-sale clause. Lender also retains strikingly similar approval rights of a potential buyer, the new plan provides for the payment of an assumption fee and Lender's principal has increased from $209 million to $247 million. SER 5-7, 10, 30, 1583-1586, 2269.

Pursuant to Lender's § 1111(b) election, the bankruptcy court found the plan to be

130389335.1

fair and equitable to Lender as defined by § 1129(b). Because the fair and equitable determination is a finding of fact, this Court reviews the determination for clear error. *In re Dynamic Brokers, Inc.*, 293 B.R. 489, 493 (B.A.P. 9th Cir. 2003) ("Whether a chapter 11 plan . . . is fair and equitable [this court] review[s] for clear error."). The Court finds no error in the Bankruptcy Court's failure to impose a due-on-sale clause that is not required by the plain language of the statute.

**B. 11 U.S.C. § 1129(a)(10) Requirements**

Section 1129(a)(10) of the Bankruptcy Code governs confirmation of a reorganization plan. It states:

> (a) The court shall confirm a plan only if all of the following requirements are met: . . . (10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

11 U.S.C. § 1129(a)(10).

Here, Debtors filed a joint plan of reorganization for all five Debtors and there are ten classes of claims under the plan. Five impaired classes under the plan voted in favor of it. SER 1213. Section 1129(a)(10) poses a conundrum for courts in cases where there are multiple debtors and creditors when satisfying the "impaired class" requirement: Should the court interpret the statute as mandating what is known as a "per-plan" requirement, which is satisfied by the acceptance of one impaired class for any debtor involved in the proceedings, or does § 1129(a)(10) contemplate a "per-debtor" requirement, meaning the plan must be approved by at least one impaired class for each debtor involved? Applying that question here, does the fact that Lender is Mezzanine Debtor's only creditor and Lender did not vote for the plan, prevent the plan from going forward?

Few courts have discussed this issue directly and the courts that have done so have reached different conclusions.

Lenders rely heavily on *In re Tribune*, 464 B.R. 126 (Bankr. D. Del. 2011), and *In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293 (Bankr. D. Del. 2011) for the proposition that § 1129(a)(10) applies on a per-debtor basis. Because Lender is the only

-7-

130389335.1

creditor for the Mezzanine Debtors and Debtors have not substantively consolidated, Lender argues that § 1129(a)(10) can only be satisfied if Lender approves the plan. Lender has not done either, thus § 1129(a)(10) is not satisfied.

In *Tribune*, the court held that § 1129(a)(10) applies on a per-debtor basis where the plan did not provide for substantive consolidation of the debtors. There, two competing plans were proposed for 111 jointly administered debtors. The court first reasoned that the statutory language was not dispositive because the Bankruptcy Code rules of construction state that "the singular includes the plural." 11 U.S.C. § 102(7). Second, the court relied on the doctrine of corporate separateness to conclude that § 1129(a)(10) applies on a per-debtor basis.

In *Jameson*, the court dismissed a Chapter 11 filing by several related debtors as a "bad faith" filing. In reaching its opinion, the court noted there was no substantive consolidation of the debtors and relied on *Tribune* to hold that each debtor with impaired creditors would need at least one accepting class. However, because one of the debtors has only one creditor and one asset, it could not confirm a plan over that lender's objections because it could not get an accepting class.

In response, Debtors primarily rely on *In re SPGA, Inc.*, 2001 WL 34750646 (Bankr. M.D. Pa. 2001), *In re Enron Corp.*, 2004 Bankr. LEXIS 2549 (Bankr. S.D.N.Y. 2004), and *In re Charter Communications*, 419 B.R. 221, 266 (Bankr. S.D.N.Y. 2009) for the proposition that the plain language of § 1129(a)(10) supports the view that the affirmative vote of one impaired class under the joint plan of multiple debtors is sufficient to satisfy § 1129(a)(10). Debtors also argue that § 1129(a)(10) confers no substantive rights on the Lender because it is only a technical requirement.

In *SPGA*, the debtors had a multi-million dollar syndicated secured credit facility with a certain "Bank Group" and senior unsecured debt held by a group of bondholders referred to as the "Subordinated Bondholders." The debtors negotiated a workout with the Bank Group but not the Subordinated Bondholders. The debtors proposed a joint plan based on the workout with Bank Group that contained fifty-seven classes of creditors.

Subordinated Bondholders objected, arguing that the debtors failed to establish an impaired accepting class as to each debtor. Subordinated Bondholders also argued that the only way the debtors could have satisfied § 1129(a)(10) was if the court had ordered substantive consolidation.

The *SPGA* court, after explaining that it did not truly understand the corporate structure prepetition and post-confirmation, held that in order to confirm the plan, the multi-debtor plan only needed one impaired accepting class to satisfy § 1129(a)(10) . However, the court appears to have been swayed primarily by the equities of the case. Specifically, the court noted that under a per-debtor reading, "ten of the 11 debtors cannot satisfy § 1129(a)(10)" because the impaired classes were to receive no distribution, each of those classes are deemed to reject the plan and the deemed rejections eliminate the possibility of a consenting class for the ten debtors on a stand-alone basis. Further, the court notes that whether the debtors "were substantively consolidated or jointly administered would have no adverse affect [sic] on the Subordinated Bondholders."

In *Enron*, the court also measured the legal standard under § 1129(a)(10) on a per-plan basis. However, *Enron* is distinguishable from the case at hand because the debtors were substantively consolidated.

In *Charter*, the court relies on both the *SPGA* and *Enron* holdings to reach the per-plan conclusion. 419 B.R. at 266.

Here, the Court finds that § 1129(a)(10) applies on a per-plan basis. First, unlike the *Tribune* court, this Court finds the plain language of the statute to be dispositive. The statute states that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired *under the plan* has accepted the plan" then the court shall confirm the plan if additional requirements are met. 11 U.S.C. § 1129(a)(10) (emphasis added). Thus, once an impaired class has accepted the plan, § 1129(a)(10) is satisfied as to all debtors because all debtors are being reorganized under a joint plan of reorganization. It is not clear to this Court as to how § 102(7) alters the plain language of § 1129(a)(10) to be read as applying on a per-debtor basis.

130389335.1

Second, the bankruptcy judge's decision to cancel Lender's equity in the mezzanine loan was not a clear error. The mezzanine loan was solely on the equity of the Operating Debtors. SER 1864. That is, the repayment of the mezzanine loan was always dependent on whether or not the Operating Debtors were profitable. Because the Operating Debtors are insolvent, Lender's equity in those debtors is also valueless. The bankruptcy judge found the cancellation of Lender's equity to be fair and equitable pursuant to 11 U.S.C. § 1129(b)(2)(A) because the equity was valueless. This Court reviews the bankruptcy court decision for clear error because the fair and equitable determination is a finding of fact. *In re Dynamic Brokers, Inc.*, 293 B.R. at 493 (B.A.P. 9th Cir. 2003). Because no clear error is present, this Court declines to alter the bankruptcy court finding.

**IV. Conclusion**

For the above reasons, the Court will affirm the bankruptcy court decision and hold that 11 U.S.C. § 1111(b) does not require a due-on-sale clause and that 11 U.S.C. § 1129(a)(10) applies on a per-plan basis.

Dated this 21st day of June, 2016.

Raner C. Collins
Chief United States District Judge